IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2005

**REGINALD D. BALDON v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Lauderdale County**
**Nos. 7168, 7226    Joseph H. Walker, III, Judge**

---

**No. W2004-01575-CCA-R3-PC  - Filed August 24, 2005**

---

The petitioner challenges the denial of his post-conviction petition, which asserted various instances of ineffective assistance of counsel.  Upon review, we conclude that the evidence does not preponderate against the post-conviction court's findings; therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Rebecca S. Mills, Ripley, Tennessee, for the appellant, Reginald D. Baldon.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

Following three separate break-ins, the petitioner, Reginald D. Baldon, was convicted by a Lauderdale County jury of:  three counts of burglary (a Class D felony); three counts of vandalism over $1000 (a Class D felony); one count of theft over $1000 (a Class D felony); one count of vandalism over $500 (a Class E felony); and four counts of theft under $500 (a Class A misdemeanor).  He received an effective sentence of twenty years.  The convictions were affirmed by a panel of this court on direct appeal.  See State v. Reginald Derell Baldon, No. W2002-01766-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 802, (Tenn. Crim. App., at Jackson, Sept. 12, 2003).

On December 22, 2003, the petitioner filed a *pro se* petition for post-conviction relief. Thereafter, counsel was appointed to represent the petitioner, and an amended petition was filed,

alleging various instances of ineffective assistance of counsel. Following a hearing, the post-conviction court denied relief by written order. The petitioner timely appeals to this court contending that:

1) Counsel was not accessible to the petitioner by phone or in person;
2) Counsel did not adequately investigate the facts, interview witnesses, develop a trial strategy, or discuss the defense with the petitioner;
3) Counsel did not view a surveillance videotape with the petitioner and failed to use other evidence without discussing it with the petitioner;
4) Counsel did not effectively cross-examine witnesses at trial; and
5) Counsel did not allow the petitioner to effectively participate in his defense.

Upon review, we affirm the denial of post-conviction relief.

The facts underlying the convictions were summarized in this court's direct appeal opinion:

The first burglary occurred on or about May 20th at Tennessee Electroplating. Employee William Broadnax testified he was the last person to leave the company's warehouse at approximately 11:00 p.m. on May 19th, and he was the first to arrive the following morning. When Broadnax entered the building, he noticed that a soft drink machine and a pay telephone were missing. He said he found the soft drink machine at the far end of the warehouse and noticed it was damaged. Broadnax also observed the surveillance recorder had been moved. According to Broadnax, he saw the Defendant at the Tina Turner Center near the warehouse on the night of the break-in.

Greg Woodard, a supervisor at Tennessee Electroplating, also testified the soft drink machine was damaged and a pay telephone was missing. Woodard stated it appeared someone had attempted to disconnect the video surveillance equipment. According to Woodard, the videotape recorded from the surveillance cameras showed the Defendant entered the warehouse at 11:13 p.m., damaged a vending machine, took money from the machine, and left the building. He said the tape also showed the Defendant returned around 1:30 a.m. Woodard indicated he knew the Defendant from school.

. . . .

The second burglary occurred May 22nd at Ripley High School. Former principal Allen Wallace testified he arrived at the school at approximately 5:30 a.m. to find the Defendant and another man breaking into vending machines. Wallace noticed the fronts of the vending machines were "ripped out" and a large claw hammer and other tools were strewn near the machines. Wallace stated he immediately fled the building and contacted the police. Wallace said he later

-2-

identified the Defendant as one of the intruders from a book of photographs and again in a photograph array.

Investigator Jeff Fain testified he found shoe tracks which indicated the perpetrators entered the school from the back of the building. Janet Randle, the owner of one of the vending machines, testified she replaced the machine at a cost of $ 2,145. She calculated over $ 128 was taken from the machine. James White, service manager for a soft drink bottler, testified two of his company's soft drink machines were damaged beyond repair. He estimated the cost of replacing the machines was $ 2,760 and that over $ 390 was taken from the machines.

. . . .

The third burglary occurred at Ripley Power and Light Company ("Ripley Power") on or about May 23rd. Morris Worlds, an employee of Ripley Power, testified that when he arrived at work that morning, he noticed a large hole in a soft drink machine and tools strewn nearby. Worlds also found drawers, a filing cabinet, and the vault were [sic] open. He said the filing cabinet, which had been pried open, was replaced at a cost of $ 291 and it would cost $ 3,500 to replace the drink machine. According to Worlds, two time-lapse videorecorders and two standard videocassette recorders were taken. He explained the time-lapse recorders, which cost $ 990 each, were used for security.

Mike Allmand, the president of the company, testified two time-lapse recorders and one standard videocassette recorder were stolen. Allmand said two of the recorders were still in boxes. He also testified that $ 26,545 in cash and some gold coins were taken from a locked safe.

Investigator Fain testified that when he arrived at the scene, he identified a broken window as the point of entry. Fain noticed that a soft drink machine was destroyed and the office was ransacked. Fain lifted fingerprints from the inside of the filing cabinet drawer which had been pried open. TBI special agent Robert McFadden testified the fingerprints found in the drawer belonged to the Defendant.

Randy Singleton testified that after midnight on May 23rd, the Defendant gave him, Jessie Jones, and Anthony Link two videorecorders which bore tags from Ripley Power. According to Singleton, the Defendant had $ 3,000 to $ 4,000 cash in denominations of twenty dollars or less. Singleton said he, Jones, and Link later abandoned the equipment in a ditch on the side of the highway when they were unable to sell it. Singleton acknowledged he pled guilty to possessing the stolen videorecorders.

Quantel Taylor and Keysha Harlan, who lived together, testified that at

approximately 3:00 a.m. on May 23rd, the Defendant and Singleton awoke them and attempted to sell them a videorecorder. Taylor stated the Defendant had two videorecorders in boxes and a third very large recorder. Odean Cooper also testified the Defendant tried to sell him electronic equipment in a box.

Id. at **2-7.

At the post-conviction hearing, counsel testified that he was appointed to represent the petitioner in case numbers 7168 and 7226, which contained a total of thirteen counts against the petitioner. At the request of the petitioner, the cases were consolidated in an attempt to avoid consecutive sentencing and negotiate a plea agreement of concurrent sentences. Counsel recalled informing the petitioner that concurrent sentences were not guaranteed and that the trial court could order consecutive sentencing even if the cases were consolidated.

Counsel testified that the State's first plea offer was concurrent sentences on all counts, amounting to an effective fourteen-year sentence at forty-five percent release eligibility. The State noted, however, that it could not guarantee that the sentence would be concurrent to the petitioner's previous sentence. Counsel stated that the petitioner rejected the offer and demanded that his sentence be concurrent with his prior sentence. In response, counsel told the petitioner that he might be statutorily required to be sentenced consecutively, as he was on release status at the time of the offense. Counsel testified that the State's final offer proposed an effective sentence of ten years, to be served at forty-five percent release eligibility, without any recommendation with regard to whether the sentence would be served concurrently or consecutively with the previous sentence. After rejecting that offer, the petitioner proceeded to trial, was convicted on twelve of thirteen counts, and received concurrent sentences of twenty years at forty-five percent release eligibility and five years at thirty percent release eligibility.

With regard to witnesses, counsel testified that he attempted to interview Randy Singleton and Anthony Link but did not speak with Keisha Harlan and Quantel Taylor. He further recalled that he "cross-examined [Taylor and Harlan] extensively about their knowledge and their testimony in [the] case" and argued inconsistencies in their statements during closing argument. Counsel testified that he visited the petitioner one or two times in the penitentiary, went over witness statements and all discovery with him, and "took numerous collect telephone calls" from him. Counsel recalled that both he and the petitioner became "frustrated" when the petitioner rejected the State's final plea offer and that the petitioner expressed his dissatisfaction with his representation on several occasions.

Counsel testified that he viewed a video surveillance tape of the burglary at Tennessee Electroplating and was told by witnesses that they were going to testify that they recognized the petitioner as the perpetrator. He stated that, as a tactical matter, he did not want the video to be shown due to its incriminating nature. Regarding the fingerprint evidence, counsel testified that he was provided with a copy of the analysis and report and that he discussed the evidence with the petitioner. He further stated that he did not cross-examine the fingerprint expert extensively but explained that he attempted to impeach his report and challenged him on every possible point.

Counsel recalled that the petitioner wrote down suggested questions at trial, but counsel did not ask them because he felt that the questions had already been asked or that their answers had already been elicited. He also explained his policy to have his secretary accept collect calls only if he is in the office to speak to the client. He reiterated that he "accepts the call always" if he is in the office. He further noted that after he is allowed to withdraw from representation, he no longer accepts collect calls from former clients. Finally, he acknowledged that an individual contacted his office seeking records from the petitioner's file; however, he did not turn the records over because he could not verify the individual's connection to the petitioner.

On cross-examination, counsel testified that he "prepared extensively" for the case, estimating that he spent over sixty hours on the case out-of-court, sixteen hours in court, and thirty-four hours on appeal. He concluded that he "was as effective as [he] could be in the face of what turned out to be overwhelming proof of guilt." Counsel stated that he consulted the petitioner regarding all pertinent points of the case, including the consolidation of the indictment, the plea offers extended by the State, the discovery, and his tactical decisions. He further recalled that it became increasingly clear that the petitioner's best defense "was that this was a continuing course of criminal conduct."

The petitioner testified that he is presently serving a twenty-year sentence at the Northwest Correctional Facility. The petitioner recalled that he requested counsel consolidate the two cases because he understood that by doing so he could get one sentence for all counts. The petitioner further stated that he only saw counsel "right before a court hearing," and that he and counsel "never discussed a defense." The petitioner recalled that neither he nor officers from the facility could reach counsel by telephone. He also stated that he did not feel comfortable with counsel's representation because he felt that counsel wanted him to settle or to "cop out to something."

The petitioner testified that he viewed the video surveillance tape from Tennessee Electroplating and that he believed it would have been beneficial to the defense and "would have changed the whole trial" because it had been "tampered with." He further noted that it would have been helpful to have viewed the videotape with counsel present.

The petitioner testified that Quantel Taylor and Keisha Harlan gave conflicting testimony during trial and that counsel did not effectively cross-examine them. He further noted that the fingerprints that were analyzed were taken from a left hand, while he is right-handed. The petitioner recalled that counsel did not ask any of the questions the petitioner suggested at trial and further stated that he did not feel that he was able to fully participate in his trial.

On cross-examination, the petitioner acknowledged that counsel presented the State's plea offers to him. He further admitted that counsel questioned former Ripley High School principal Allen Wallace regarding the identification of the petitioner, as the petitioner had requested, and that Wallace positively identified the petitioner at trial.

Corporal Rhonda Mack testified that she had been employed by the Lauderdale County

Sheriff's Department for eight years and that she worked in the jail at the time the petitioner was arrested and incarcerated on the subject charges. She recalled that the petitioner asked her if she would call counsel and ask him to visit the petitioner in jail; however, when she placed the call, counsel's secretary told her that counsel was out of the office. Subsequently, Lieutenant Bratton, also of the Lauderdale County Sheriff's Department, instructed Mack not to call again because counsel did not want Department employees "calling up there for the inmates."

As the final witness at the post-conviction hearing, Amanda Lewis testified that she was engaged to the petitioner and that the petitioner contacted her regarding a document the petitioner needed from counsel for his appeal. She recalled that the petitioner was unable to contact counsel and that she went to counsel's office to retrieve the trial transcript, to no avail.

Following the hearing, the post-conviction court issued a written order denying relief:

> The court finds that counsel adequately investigated the case and was ready for trial. Counsel advised his client of offers made by the State. Petitioner did not accept any plea offer, and insisted on a trial, which he received. Counsel performed above the required standards both before and during trial.
>
> The Petitioner testified that he viewed the video of the burglary and felt it would have helped him, but that he felt that the video was tampered with. The video required a special machine to play, and [counsel] arranged to visit the scene of the burglary, a local plant called S&R, and viewed the video on their equipment. His testimony was that the video was harmful, as the Petitioner has a very distinctive appearance, and it was obvious on the tape that the Petitioner was the burglar. [Counsel] was relieved when the State was not able to arrange the moving of the special equipment necessary to play the surveillance video to the Courtroom for the jury to view. The Court accredits the testimony of [counsel].
>
> The petitioner claims that he was denied the effective assistance of counsel because certain witnesses were not called to testify. [Counsel] interviewed these witnesses, and some of them testified at the trial on behalf of the State.
>
> [The petitioner] testified that he felt that [counsel] did not want to help him, as evidenced by the fact that [counsel] moved to withdraw as counsel on the day of trial. Both [the petitioner] and [counsel] testified that [the petitioner] requested that the motion be filed, which [counsel] did at the request of [the petitioner]. It is not ineffective assistance of counsel to file a motion requested by the client, and it is not an indication that [counsel] did not want to help Petitioner. [Counsel] persevered in assisting the Petitioner, even though the Petitioner was belligerent and unhelpful in his own defense. The Court finds that [counsel] performed more than adequately in defending this client, who was not co-operative [sic] in his own defense.

-6-

. . . .

The Court finds that the petitioner failed to carry the burden of showing that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial.

Analysis

This court reviews a claim of ineffective assistance of counsel under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to the defendant so as to deprive him of a fair trial. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. Goad, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002) (citing Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The petitioner first contends that counsel did not meet with him adequately and that he was unable to reach counsel by phone. However, the post-conviction court accredited counsel's testimony in which he stated that he met with the petitioner one or two times at the penitentiary and before motion hearings. Moreover, counsel recalled that he "took numerous collect telephone calls"

from the petitioner during the course of his representation. We conclude that counsel conferred with the petitioner adequately and that the evidence does not preponderate against the post-conviction court's determination that counsel was not ineffective in this regard.

The petitioner next challenges counsel's preparation for trial, specifically contending that he did not fully investigate the case, interview witnesses, or develop a sound trial strategy. However, at the post-conviction hearing, counsel testified that he spent approximately sixty hours out-of-court preparing for the petitioner's case. Moreover, as the post-conviction court noted, counsel spoke to several witnesses, some of whom were called to testify at trial. Finally, counsel recalled that he discussed all pertinent points of the defense with the petitioner, including the State's plea offers, discovery, and trial tactics. Upon review, the evidence does not preponderate against the post-conviction court's finding "that counsel adequately investigated the case and was ready for trial."

Next, the petitioner contends that counsel was ineffective in failing to view the video surveillance tape with him and in failing to use that evidence as part of the defense without first discussing the matter with the petitioner. At the post-conviction hearing, counsel was clear that the surveillance tape was incriminating and detrimental to the defense, as the petitioner was easily identifiable as the perpetrator. The post-conviction court accredited counsel's testimony regarding his tactical determination, and we agree that the evidence does not preponderate against this finding.

The petitioner also contends that counsel was ineffective in failing to thoroughly cross-examine the State's witnesses. However, counsel testified that he "cross-examined [Quantel Taylor and Keisha Harlan] extensively about their knowledge and their testimony in [the] case" and vigorously cross-examined the fingerprint expert in the face of overwhelming evidence, including an attempt to impeach his report. Upon review, we agree with the post-conviction court's finding that "counsel performed above the required standards both before and during trial."

Finally, the petitioner contends that counsel did not let him participate at trial. At the post-conviction hearing, counsel testified that he conferred with the petitioner on all pertinent points of the defense. Moreover, while counsel acknowledged that the petitioner wrote down questions that he wanted counsel to ask, he stated that he felt that the majority of those questions had already been asked or their answers already elicited. Finally, counsel stated that, as the petitioner requested, he questioned former Ripley High School principal Allen Wallace regarding the petitioner's identity, and Wallace positively identified the petitioner as the perpetrator. We conclude, as did the post-conviction court, that counsel was not ineffective in this regard.

Conclusion

Based on the foregoing reasoning, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE